Emil Klingbeil, Appellant, v. Fred Becklenberg et al., Appellees.

Gen. No. 32,576.

Opinion filed May 14, 1928.

Leslie H. Whipp, for appellant.

Gallagher, Shulman & Abrams, for appellees.

Mr. Justice O'Connor delivered the opinion of the court.

By this appeal the complainant seeks to reverse a decree of the superior court of Cook county sustaining a demurrer to his amended bill of complaint and dismissing it for want of equity. The question for decision therefore is, Does the amended bill state a cause of action?

The allegations of the bill in short compass are that on February 25, 1924, complainant and Fred Becklenberg, one of the defendants, entered into a written contract whereby Becklenberg was to construct a 200-room apartment hotel on the premises owned by him, and as part of the same transaction the parties entered into a written lease whereby the hotel was demised to complainant for a period of 20 years beginning October 1, 1924, and expiring September 30, 1944, at a rental of $1,100,000, payable in monthly instalments; that at the time complainant paid Becklenberg $4,500, being the rent for the first month for the premises as provided in the lease. A further provision was that the hotel was to be completed by October 1, 1924, or as soon thereafter as it was possible to do so; that in the hotel to be constructed there were to be stores, shops and a theater, which were not demised to complainant; that after the execution of the lease defendant Becklenberg proceeded to construct the building and to enable him to do so incumbered the premises for $1,250,000, which was evidenced by a bond issue; that the building was not ready for occupancy until about December 15, 1924, at which time it was still incomplete in some particulars mentioned, but at the suggestion and request of Becklenberg complainant rented a few rooms to tenants and they moved

in about December 12, 1924; that some time after the execution of the lease the Diversey Building Corporation, one of the defendants, succeeded to Becklenberg's rights and advised complainant that since he had taken possession of the hotel although it was not completed, he would be required to pay the rent reserved by the lease. Complainant objected to this on the ground that the building was then incomplete and but few of the rooms could be used by him, but Becklenberg insisted that the rent be paid or the lease would be forfeited.

It was further alleged that the building was to be constructed in accordance with plans and specifications which were attached to and made a part of the contract entered into between complainant and Becklenberg on February 25, 1924; that complainant, in accordance with the terms of the lease, purchased and installed in the hotel $55,000 worth of furnishings, on which he executed a chattel mortgage to the defendants in the sum of $50,000 to assure the faithful performance by him of the terms and conditions of the lease; that after December 13, 1924, when complainant rented out a few of the rooms as stated, he notified the defendants of the claimed incompleteness of the building and the defects in its construction, which defects defendants refused to remedy. The bill then specifies the claimed defects in the building as follows:

(1) That the roof was constructed of poor material and in an unworkmanlike manner, in consequence of which it leaks, damaging the plaster and causing the rooms on the top floor to be untenantable. (2) That defendants failed to install a Kewanee boiler with standard equipment, guaranteed 70 degrees in the coldest winter weather, as the lease provided, but installed an inferior heating plant, as a result of which the building could not be properly heated; that the grates in the fire box of such inferior plant had to be replaced every six weeks at great expense to the complainant; that the chimney leading from the boiler was

improperly constructed in an unworkmanlike manner and was not "of sufficient height to carry sufficient draft to keep the fires alive in said fire box." (3) That by reason of improper mixture and improper roofing material the promenade court was badly cracked and could not be used. (4) That the bathrooms were not according to specifications in that proper material was not used "between the bricks and casings so that the same are in an open condition, all of which leak cold water from the outside into said bathrooms"; that the bedroom doors were too small and as a result the furniture had to be put in through the windows, and that the sewage system was improperly constructed. A great many other objections of a like character are made.

The prayer of the bill was that the court decree that the contract entered into between the parties on February 25, 1924, be specifically performed; that the building be constructed in accordance with the plans and specifications: "(1) By placing the roof over the premises * * * in a condition so that it will not leak. (2) Install a Kewanee straight draft fire box boiler. (3) Install radiators in the rooms. (4) Install a proper and sufficient hot water boiler. (5) Install calking between the bricks and windows of the building so as to prevent the same from leaking water and air from the outside. (6) Make such change in the sewage system so that the sewage from the hotel will be properly carried away. (7) Properly drain the basement of the building so that water will not stand in the basement. (8) Place the said stairways in a condition so that the same are usable. (9) Place counter-weights on the fire escapes. (10) Properly enclose the steam pipes according to the plans and specifications. (11) Place grease traps in the drug store and restaurant."

We think it is obvious, from the allegations of the bill and the prayer for relief, that complainant is

seeking to have a great part of the construction of the hotel done over, repairs made where material or workmanship have been faulty; that the building be reconstructed in part and that the court compel defendants to redecorate parts of the building. It is obvious that a court of chancery will not enter upon such a task, but will leave complainant to his remedy at law. *Cromwell v. Allen,* 151 Ill. App. 404. Moreover, we are of the opinion that complainant was guilty of laches. He took possession of the building about December 12, 1924, and although at that time the building was not completed and although shortly thereafter he complained to the defendants that the building had not been constructed in accordance with the plans and specifications, and although the defendants refused to make any alterations or completions, complainant did not take any action until the bill was filed on September 24, 1926. Complainant should have acted promptly and the defense of laches may be raised by demurrer where the same appears from the face of the bill. *Gunton v. Hughes,* 181 Ill. 132.

While the general rule is stated to be that a court of equity will not specifically enforce a contract for the construction of a building, yet there are exceptions to this rule, and in a proper case such a contract will be specifically enforced. 26 Am. & Eng. Encyc. of Law (2nd Ed.) 93, 94; section 23 (p. 63), Pomeroy on Specific Performance of Contracts (3rd Ed.); Story's Equity Jurisprudence (14th Ed.), secs. 1008–1009; *Jones v. Parker,* 163 Mass. 564. But in the instant case the bill is not to seek the construction of a building but the alteration, remodeling and repairing of it. The building has already been constructed.

The decree of the circuit court of Cook county is affirmed.

*Affirmed.*

Matchett, P. J., and McSurely, J. concur.