This action was brought by the plaintiffs as assignees of a lease made by the defendant of the premises known as 44 Vesey street, in the city of New York, for two years, containing a provision for a renewal, at the option of the lessees, for a further term of three years, by giving the lessor notice as therein provided, which notice had been given as therein provided, for the specific performance of an agreement made by the lessor to repair damages caused by fire. The lease provided that all other repairs were to be made by the lessees, and the case shows that this agreement of the lessor was interlined after the preparation, but before the execution of the lease. The case shows that the premises were nearly destroyed by fire while in the occupation of the plaintiffs, under the lease, so as substantially to require rebuilding; but the trial judge found that they could be repaired, and the defendant must, after affirmance of the judgment by the General Term, be held in this court concluded by this finding. The judge further found that a reasonable time for doing the requisite repairs was four months.
The question is thus presented whether equity will enforce the specific performance of an agreement for making repairs of this character. The learned chief justice who gave the opinion of the General Term, after an elaborate and learned examination of the English authorities, arrived at the conclusion, *Page 369 
that equity would specifically enforce agreements for making repairs. In this, he differs from Judge STORY, who, after an examination and citation of some of the leading cases relied upon by the learned judge, adopts precisely an opposite conclusion. (1 Story's Equity, 726, §§ 726, 727.) The accuracy of the conclusion of Judge STORY is strongly corroborated by the fact, that in this State, and so far as I am aware, in this country, no court of equity has ever attempted the exercise of any such power. The same conclusion is substantially adopted by a learned English author of a work upon this particular branch of equity jurisprudence, who refers to most of the cases relied upon by the learned judge. (Fry on Specific Performance, 19, § 48.) I shall refer to only a few of the cases cited by the judge, although I have examined nearly all. City of London v. Nash (1 Vesey, 11; more fully reported, 3 Atkyns, 512), decided by Lord HARDWICK, is much relied upon in the opinion. In this case the chancellor stated that equity would enforce the performance of a building contract, for the reason that it was an entire thing, but not a contract for repairs. While I am unable to see if the former is thus enforced, why the latter should not be, for the reason that the former would be attended by about the same difficulties as the latter, and a legal remedy would be equally applicable to both, yet the case is authority against the conclusion of the General Term in the present case, as this is an agreement for making repairs. It may be further remarked, that a specific performance of the contract to rebuild was not decreed, the chancellor being of opinion that that would be inequitable under the circumstances, and the party injured by the breach of the contract was left to his legal remedy for the recovery of damages. The judgment given is no authority for enforcing the specific performance of contracts to build. In the subsequent case of Lucas v. Commerford (3 Brown, 166), it was expressly held by Chancellor THURLOW, that there could not be a decree to rebuild, as the court could no more undertake the conduct of a rebuilding than of a repair. I think the soundness of the reason given *Page 370 
a full answer to the criticism of this chancellor contained in the opinion with a view to impair the authority of the judgment given in this case. In Rayner v. Stone (2 Eden, 128), a demurrer to a bill for the specific performance of covenants contained in a lease to repair hedges and the mansion house, was sustained by Lord WORTHINGTON. Among the reasons assigned for the judgment, was, that the court had no officer to see to the performance, which the chancellor said was to him very strong. He asks how can a master judge of repairs in husbandry, etc. He adds that it is said that this is an equitable right, and that it was insisted that he should put the plaintiff in a better state than what he could be at law, but the court had no jurisdiction to strip the defendant of the right to try the supposed breach of covenant at law. Besides, how can a specific performance of things of this kind be decreed? The nature of the thing shows the absurdity of drawing these questions from their proper trial and jurisdiction. These reasons apply with all their force to an attempt to enforce the specific performance of the contract in question. The court must first adjudge what repairs are to be made and the time within which they are to be done. When this is accomplished more serious difficulties remain. The idea that the court can appoint a receiver to take possession of the property and cause the work to be done, with money furnished by the defendant, would be, in the language of Lord WORTHINGTON, absurd. The mode, if undertaken, must be for the court first specifically to determine what shall be done, and when and how, and then to enforce performance by attachment, as for contempt in case of alleged disobedience. Then will arise, not only the question, whether there has been substantial performance, and if found not, whether the defendant had any such excuse therefor as will exonerate him from the contempt charged, and in case of performance, but not in as beneficial a manner as adjudged, the compensation that should be made for the deficiency. It is obvious that the execution of contracts of this description, under the supervision and control of the court, would be found very difficult if not impracticable, *Page 371 
while the remedy at law would, in nearly, if not in all cases, afford full redress for the injury. It is for these reasons that such powers have never been exercised in this country. It was for these reasons that the court in the South Wales R. Co. v.Whythe (5 De G., McN. Gord., 880), refused to decree the specific performance of a contract to construct a branch railway. The case enforcing the specific performance of an agreement made by a railway company with a land owner, to construct an arch under their road for his use, does not militate against this doctrine. Damages in an action, at law, would not, in such a case, afford adequate redress. The same may be said of the case enforcing a contract for the construction of a wharf, etc. The want of an adequate remedy at law has always been regarded as a proper ground for sustaining a bill in equity. (See Wilson v.Furness R. Co., 9 Equity Cases, 28.) What was said by Lord HARDWICK in Rook v. Worth (1 Vesey Sr., 460), was intended to apply to the particular facts of that case, which related to questions as to the rights of tenant in tail and the reversioner, which could not well be protected in a legal action.
But I do not deem it necessary further, to pursue the investigation. As I understand the English cases, the power of enforcing the specific performance of contracts for repairs is not now exercised by courts of equity there, and there is no authority for its exercise by the courts of this State. This being so, a court of equity had no jurisdiction, as such, of the action.
But under the Code a plaintiff may unite in the same complaint several causes of action, both legal and equitable, arising out of the same transaction. (Code, § 167, sub. 1) In the present case the rights of the plaintiffs, under the agreement, were stated in the complaint, and the failure of the defendant to perform the same, was also set out. The parties proceeded to trial upon the claim made by the plaintiffs for a specific performance of the contract. The trial judge found that the facts were not such as to authorize the granting of this relief, but as some evidence, showing the value of the *Page 372 
plaintiffs' interest in case of a prompt repair of the premises, had been given, the judge proceeded to give judgment, that the lease should be canceled, and the plaintiffs should recover of the defendant the value of his interest in the premises, upon the basis of the repairs to the building having been completed in a reasonable time after the fire. To this the defendant's counsel excepted. When the judge found that the plaintiffs was not under the facts of the case, entitled to the equitable relief demanded (specific performance), the case as an action in equity was terminated. It then appeared that the plaintiffs never had any equitable cause of action against the defendant, adjudging a cancellation of the lease was wholly immaterial. This was the necessary result of a recovery by the plaintiffs of their damages for the unexpired term, consequent upon the refusal of the defendant to perform his agreement to make the repairs. The plaintiffs could not recover these and retain any rights under the lease. Such a judgment, in favor of the plaintiffs, would bar an action brought by the defendant against them for rent. Under a system vesting equity and legal jurisdiction in different tribunals, the former, after determining that the complainant had no equitable cause of action, did not retain jurisdiction for the purpose of giving such relief as he would be entitled to at law. (Kempshall v. Stone, 5 Johns. Ch., 193, and cases cited.) It was only where the plaintiff was entitled to equitable relief upon the case made by him, but which could not be awarded, for the reason that it was not in the power of the defendant to perform the judgment granting it, or that such relief would be harsh and inequitable under all the circumstances of the case, that the court, as a substitute therefor, awarded an equivalent in damages, thus ending the controversy, instead of sending the parties to a court of law for that purpose. That was not this case. There was no incapacity of the defendant to specifically perform the contract if the plaintiffs were entitled to such relief. The court should have held that they were not so entitled upon the case made by them. This, as before remarked, terminated *Page 373 
the case as a suit in equity, and, under a system vesting equitable and legal jurisdiction in different tribunals, the complaint should have been dismissed. But jurisdiction of both classes of action is now vested in the same tribunal, the mode of trial only being different. If the complaint contains an equitable and also a legal cause of action, if the plaintiff, upon the trial of the former, fails in establishing a case entitling him to relief, he has still a right to a trial of the legal cause of action set out. The defendant is not, therefore, entitled to a dismissal of the complaint until the latter has been tried. In the present case, the complaint stated the agreement of the defendant to make the repairs, and the neglect of the defendant to perform it; it failed to stated some other facts essential to the right of the plaintiffs to recover the damages thereby sustained. The complaint might, therefore, have been properly regarded as setting out an equitable cause of action only, and, upon the failure of the plaintiffs in establishing such a cause, properly dismissed. But it was in the power of the court, upon terms deemed just, to allow an amendment of the pleadings, so that a legal remedy might be had in the action, as, from the lapse of time, the statute of limitations may bar another action. I think an opportunity should be given to the plaintiffs to obtain a legal remedy in this by the proper amendment, and securing to the defendant his right of trial by jury.
The judgment appealed from must be reversed, and a new trial ordered.
All concur.
Judgment reversed. *Page 374