Chief Judge Desmond.
Again, as in Matter of Staklinski (Pyramid Elec. Go.) (6 N Y 2d 159), the courts are called upon to confirm an arbitration award which, conformably to the express powers given by the parties to the arbitrators, directed specific performance of a contract. Appellant, defaulting in performance and losing its ease before the arbitrators, now argues to the courts, as -did the losing party in Staklinski and in Matter of Ruppert (Egelhofer) (3 N Y 2d 576), that enforcement of this award would be contrary to public policy. Specific performance of a contract to construct a building, argues appellant, is never ordered by courts.of equity because of the necessity of continuous judicial supervision and control of performance. Therefore, so the argument runs, the same courts will not confirm and enforce an arbitration award which decrees specific performance of the same kind of agreement. We disagree. There is no hard and fast rule against applying the remedy of specific performance to such contracts, especially when the parties have. by agreement provided for just that remedy.
In 1955 appellant Iris, owner of vacant land in Levitt-own, Nassau County, entered into a written agreement with respondent Grayson (later assigned by Grays'on to its subsidiary respondent Klein) whereby Iris undertook to erect on the Iris tract a building (part of a “ shopping center ”) to be rented by Iris to Grayson for use as a retail department store for a term of 25 years after completion with certain optional provisions for renewals of the term. Possession was to be turned over to Grayson “ on or before September 1,. 1957, time being of the essence ”. The agreement called for arbitration of all disputes and incorporated the rules of the American Arbitration Association which in terms empower the arbitrator in his award to grant any just or equitable remedy or relief “ including * * * specific performance ”.
There were -several amendments and extensions of the original contract, but none of these are relevant to our discussion. The plans and specifications for the building were completed or practically completed, a public ground-breaking ceremony was held and excavation commenced, then Iris notified Grayson *137 Klein that, because of difficulties in getting mortgage money, Iris could not go further unless Orayson-Klein agreed to increase the agreed rent. The tenant declined to pay more. The building has never been- completed.
It was, apparently, always the intention of Iris to obtain by mortgage loan the money it needed for construction but there is nothing in the agreement relieving Iris of its obligation, in the event it should find such borrowing to be difficult or impossible. .At the arbitration and in the courts Iris has argued ‘ ‘ impossibility ” but the arbitrators disposed of that issue by ordering Iris to “ proceed forthwith with the improvements of the leased premises in accordance with the terms of the said lease, as amended.” There was no proof before the arbitrators of any physical or actual impossibility as distinguished from difficulty of financing or additional expense of construction.
It would be quite remarkable if, after these parties had agreed that arbitrators might award specific performance and after the arbitrators had so ordered, the courts would, contrary to the command of article 84 of the Civil Practice Act, frustrate the whole arbitration process by refusing to confirm the award. The only ground suggested for such a refusal is that confirmation would involve the court in supervision of a complex and extended construction contract. We hold that this apprehension or speculation is no deterrent to confirmation by the courts.
There is, of course, an old tradition or approach according to which courts have been reluctant to enforce “ Contracts which require the performance of varied and continuous acts, or the exercise of special skill, taste and judgment” because “the execution of the decree would require such constant superintendence as to make judicial control a matter of extreme difficulty ” (Standard Fashion Co. v. Siegel-Cooper Co., 157 N. Y. 60, 66). In some instances courts of equity in other States have for some such reasons refused to order specific performance of building contracts (McCormick v. Proprietors of Cemetery of Mt. Auburn, 285 Mass. 548; see discussion in McDonough v. Southern Oregon Min. Co., 177 Ore. 136, 150). Other courts of equity have gone the other way (see Jones v. Parker, 163 Mass. 564, which also was a contract to build for a lessee). ‘ ' There is no universal rule that courts of equity never will *138 enforce a contract which requires some building to be done. They have enforced such contracts from the earliest days to the present time ” (Jones v. Parker, supra, p. 567). On varying facts our New York decisions take one or the other position (Strauss v. Estates of Long Beach, 187 App. Div. 876; Post v. West Shore R. R. Co,, 123 N. Y. 580, 591; Jones v. Seligman, 81 N. Y. 190; Beck v. Allison, 56 N. Y. 366; Conger v. West Shore R. R. Co., 120 N. Y. 29, 32). Modern writers think that the " difficulty of enforcement” idea is exaggerated and that the trend is toward specific performance (5 Corbin, Contracts [1951 ed.], § 1172; 5 Williston, Contracts [rev. ed.], p. 3977; Restatement, Contracts, § 371, comment a). Clearly there is no binding rule that deprives equity of jurisdiction to order specific performance of a building contract. At most there is discretion in the court to refuse such a decree. And here we do not even have an equity suit but a motion made as of right to confirm a completely valid arbitration award conforming in all respects to the express conferral of authority on the arbitrators and meeting all statutory requirements for confirmation (see Civ. Prac. Act, §§ 1461,1462,1462-a).
Assuming that the equity court in an original suit would have discretion to refuse specific performance, and even making the very large assumption that the court would have similar discretionary power to refuse to confirm this award, it remains that such discretion, if any, was exercised the other way in this ease, and unanimously affirmed by the Appellate Division. That exercise of discretion-was justified on the facts. There is nothing extraordinary about this ordinary building contract. Appellant is simply being required to fulfill its promise. If it fails or refuses to obey the judgment, the remedy is in section 773 of the Judiciary Law.
Arbitration is by consent and those who agree to arbitrate should be made to keep their solemn, written promises. Such is New York State’s public policy, plainly written in article 84 of the Civil Practice Act. The courts should follow a ‘ ‘ liberal policy of promoting arbitration both to accord with the original intention of the parties and to ease the current congestion of court calendars ” (Lawrence Co. v. Devonshire Fabrics, 271 F. 2d 402, 410).
The judgment should be affirmed, with costs.